**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ALAN P. CLARK, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:05-cv-1345 (WWE) |
| | : | |
| TIMOTHY DOWTY, GARRITT KELLY, | : | |
| KEVIN WILCOX, JARED BOYNTON, | : | |
| MATTHEW REIMONDO, and the | : | |
| TOWN OF EAST HAMPTON, | : | |
| | : | |
| Defendants. | : | |

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This action arises from plaintiff Alan P. Clark's claims that defendants Timothy Dowty, Garritt Kelly, Kevin Wilcox, Jared Boynton, Matthew Reimondo and the Town of East Hampton (the "Town") violated his rights under the Fourth, Fifth and Fourteenth Amendments of the United States Constitution as enforced through 42 U.S.C. sections 1983 and 1988; Article First, Sections 8 and 9 of the Connecticut Constitution and the common law. Specifically, plaintiff originally claimed that defendants Dowty, Wilcox and Boynton deprived him of liberty without due process of law and utilized excessive force in the effectuation of his false arrest in violation of 42 U.S.C. sections 1983 and 1988 (count one); that Dowty, Wilcox and Boynton violated his rights under Article First, Sections 8 and 9 of the Connecticut Constitution due to the false arrest and the officers' use of excessive force (count two); that Dowty, Wilcox and Boynton committed assault and battery (count three); that Dowty, Wilcox and Boynton were reckless and malicious

(count four); that Dowty, Wilcox and Boynton were negligent (count five); that they negligently caused plaintiff to suffer emotional distress (count six); and that they intentionally caused plaintiff to suffer emotional distress (count seven). Plaintiff also claims that Dowty, Wilcox and Boynton failed to provide him with proper and timely medical treatment (counts one, four, five, six and seven) and that Officer Dowty failed to intercede on plaintiff's behalf.[1]  Plaintiff asserts a claim of failure to supervise and discipline subordinates against defendant Sergeant Garritt Kelly in violation of 28 U.S.C. sections 1983 and 1988 (count eight).  He claims that Chief Matthew Reimondo violated his rights pursuant to sections 1983 and 1988 for, inter alia, failure to train, supervise and discipline defendant officers and that he failed to furnish plaintiff with timely and proper medical attention (count nine); that the Town of East Hampton is liable for its failure to enforce and promulgate appropriate policies and for its failure to supervise and discipline defendant Officers Dowty, Wilcox and Boynton in violation of sections 1983 and 1988  (count ten); that the Town is liable to plaintiff pursuant Conn. Gen. Stat. Section 52-557n in that it is liable for the acts of its employees (count eleven); and that the Town is liable pursuant to the doctrine of respondeat superior (count twelve).[2]  Defendants move for summary judgment as to all counts.  For the following reasons, defendants' motion will be granted in part and denied in part.

---

[1]Plaintiff withdrew counts one, two and three against defendant Officer Dowty.

[2]Plaintiff withdrew count thirteen, indemnification on the part of the Town pursuant to Conn. Gen. Stat. section 7-465.

## BACKGROUND

In September 2003, plaintiff and his then wife, Stephanie Clark, had a domestic disturbance that prompted her to leave the family residence in East Hampton, Connecticut. Ms. Clark contacted the East Hampton Police Department and requested a police escort back to the house in order to retrieve some personal belongings. She told the police, inter alia, that her husband had guns in his possession. Police officers Timothy Dowty and Kevin Wilcox accompanied her to her home, where they encountered plaintiff, his son David Clark, his sister and his brother-in-law.

Officer Dowty attempted to speak with plaintiff about the events of the evening, but plaintiff became uncooperative and ran from Dowty to a cow pasture situated on the property. Officers Wilcox and Dowty chased after plaintiff and Dowty requested back up. Defendant Officer Boynton responded and arrived on the scene.

In order to subdue plaintiff, defendants Wilcox and Boynton utilized oleoresin capsicum aerosol ("pepper spray") and a police department-issued baton. Informing plaintiff that he was under arrest, the officers handcuffed him and placed him in the police cruiser. Plaintiff was transported to the Middlesex Medical Center in Marlborough, Connecticut for treatment of lacerations and contusions. Plaintiff required approximately thirteen staples to close a head laceration.

Plaintiff was arrested and charged with two counts of Threatening in the Second Degree, Conn. Gen. Stat. section 53a-62; two counts of Interfering with a Police Officer, Conn. Gen. Stat. section 53a-167a; and Disorderly Conduct, Conn. Gen. Stat. section 53a-182. A Family Violence Offense Report was filed on September 13, 2003. On September 15, 2003, plaintiff appeared in the Superior Court, Middletown, and his case

3

was referred to the Family Services Unit. Plaintiff was ordered to participate in the Family Violence Education Program of the Family Services Unit from September 24, 2003 through January 16, 2004, during which time he also underwent court-ordered therapy with a psychologist. On January 16, 2004, plaintiff's criminal charges were nolled by the Court.

**DISCUSSION**

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Anderson, 477 U.S. at 24.

4

**A.      Statute of Limitations**

In plaintiff's amended complaint dated November 1, 2005, he removed Officer Michael Fitzpatrick as a defendant and added Officer Jared Boynton as a defendant in the present matter.  Plaintiff has brought two claims against Boynton that defendants argue are time-barred by the statute of limitations: negligence (count five) and negligent infliction of emotional distress (count six).  Defendants argue that the claims against Boynton are time barred by the two year statute of limitations applicable to negligence claims.  Conn. Gen. Stat. § 52-584.  See Zielinski v. Kotsoris, 279 Conn. 312, 321 (2006).  The Court agrees with defendants.

A party may amend a complaint to change the name of a party after the statute of limitations has run if the amended complaint relates back to a timely filed complaint.  See Fed. R. Civ. P 15(c).   In order for an amended complaint that names a new party to relate back to the original pleading, three requirements must be satisfied: 1) both complaints must arise out of the same conduct, transaction, or occurrence; 2) the additional defendant must have been omitted from the original complaint by mistake; and 3) the additional defendant will not suffer prejudice as a result of the delay.  William H. McGee & Co. v. M/V Ming Plenty, 164 F.R.D. 601, 606 (S.D.N.Y. 1995) (holding that a misidentification of similarly named or related companies permits relation back to the amended complaint).

In a motion to amend, plaintiff must assert a reason for the mistake in omitting the proposed defendant from the original complaint.  Reed v. Hartford Police Dept., 2006 WL 2349591, *5 (D.Conn.).  Here, plaintiff states that he learned from defendants' draft of the Rule 26(f) Report of Parties' Planning Meeting that Officer Boynton – not the

5

originally named Officer Fitzpatrick – was present at the scene of the incident at issue. The fact that plaintiff did not know that Officer Boynton was present at the scene does not constitute a "mistake" as contemplated by Rule 15(c). Rule 15(c) does not permit an amended complaint naming a new defendant to relate back if the newly added party was not included in the original pleading because plaintiff did not know his identity. Barrow v. Wethersfield Police Dept., 66 F.3d 466, 470 (2d Cir. 1995) ("Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.").

Plaintiff added Officer Boynton as a defendant because he was not aware of his presence at the arrest. Thus, he is not correcting a mistake in the original complaint. Instead, plaintiff is supplying information that he did not possess at the time of the original filing. Because the new name was added "not to correct a mistake but to correct a lack of knowledge, the requirements of Rule 15(c) for relation back are not met." Id. Plaintiff's claims of negligence and negligent infliction of emotional distress against Officer Boynton will therefore be dismissed.

**B.    Federal Law Claims**

**1.    False Arrest and Malicious Prosecution[3]**

Under the aegis of the Fourth Amendment, plaintiff claims that defendants

---

[3]Plaintiff's amended complaint alleges defendants were "reckless and malicious" in their false arrest of plaintiff, their use of excessive force and their failure to provide proper medical treatment. In their briefs, however, both parties also argue a claim of malicious prosecution. Therefore, the Court will address this issue and construe plaintiff's complaint as asserting a claim for malicious prosecution. The Court will also consider count four pursuant to common law. See part C, section 4, infra.

violated his constitutional right to be free from false arrest. Specifically, plaintiff alleges that defendant Officers Dowty, Wilcox and Boynton denied him due process as a result of the alleged false arrest, that the arrest was unlawful, that defendant officers were reckless and malicious in their false arrest of plaintiff, and that they were negligent in this false arrest.[4] Plaintiff brings his claims under section 1983 and Connecticut law.

Claims of false arrest or malicious prosecution under section 1983 are comparable to the same claims brought under state law. Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir. 2003) (applying New York law to plaintiff's claim of malicious prosecution); Hunter v. City of Bridgeport, 2004 WL 1462459, *3 (Conn.Super) ("A false arrest claim under section 1983 is substantially the same as a claim for false arrest under Connecticut law.").

In order to assess a claim of false arrest or malicious prosecution under section 1983, the Court generally looks to the law of the state in which the arrest occurred. Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004). Connecticut law shall apply to the instant case.

In Connecticut, both false arrest and malicious prosecution claims require plaintiff to demonstrate facts that prove the underlying action was initiated without probable cause. Assegai v. Bloomfield Board of Education, 2006 WL 304793, *2 (2d Cir.). Claims of malicious prosecution require plaintiff to prove additional elements. The test for malicious prosecution dictates that plaintiff must demonstrate that: 1) defendants initiated the criminal proceedings against plaintiff; 2) the criminal

---

[4]As ruled, supra, plaintiff's claims of negligence as to Officer Boynton are dismissed.

proceedings terminated in plaintiff's favor; 3) defendants acted without probable cause; and 4) defendants acted with malice. <u>Holman v. Cascio</u>, 390 F.Supp.2d 120, 122 (2005).

In the present case, and viewing the facts in the light most favorable to the nonmoving party, defendants acted with probable cause and, therefore, were justified in making their arrest of plaintiff. The officers were taken to the scene by plaintiff's wife who had reported a domestic disturbance, had told them that her husband possessed firearms, and had requested a police escort back to her home in order to retrieve personal belongings. Upon their arrival, they were met by plaintiff, who was identified as the victim's husband. Conn. Gen. Stat. section 46b-38b requires that a peace officer arrest a person suspected of committing a family violence crime.[5] Based on the report by plaintiff's wife, the officers had probable cause to believe there was or had been a family violence crime in progress. They arrested plaintiff pursuant to their statutory obligation and charged him with the "appropriate crime:" Threatening in the Second Degree, Conn. Gen. Stat. section 53a-62.

Furthermore, plaintiff did not answer the officers' questions and ran away from them into the adjacent cow pasture. "[D]eliberately furtive actions and flight at the approach of strangers or law officers are strong indicia of <u>mens rea</u>, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of

---

[5]Conn. Gen. Stat. section 46b-38b provides in relevant part: "(a) Whenever a peace officer determines upon speedy information that a family violence crime . . . has been committed within such officer's jurisdiction, such officer shall arrest the person or persons suspected of its commission and charge such person or persons with the appropriate crime."

crime, they are proper factors to consider in the decision to make an arrest." Sibron v. State of New York, 392 U.S. 40, 66-67 (1968).   Accordingly, defendants were justified in their arrest of plaintiff and his claims of false arrest cannot survive summary judgment.  As a result, all claims related to his assertions of false arrest fail.  The Court will grant summary judgment on counts one, two, four and five of plaintiff's amended complaint insofar as they allege false arrest.

Recent case law has held that a finding of probable cause concludes the analysis for false arrest and malicious prosecution.  Assegai at *2 (plaintiff's claims of false arrest and malicious prosecution both fail for lack of any showing that he was arrested without probable cause).  However, the Court will consider separately plaintiff's claim of malicious prosecution pursuant to its distinct test.

Even if plaintiff had shown evidence as to the lack of probable cause for his arrest, any claim of malicious prosecution would fail because plaintiff cannot demonstrate that the ensuing proceedings terminated in his favor.  A criminal proceeding terminates in a plaintiff's favor when its "final disposition is such as to indicate the accused is not guilty."  Singleton v. City of New York, 632 F.2d 185, 193 (2d Cir. 1980).  A plaintiff may satisfy this element by showing that he was discharged without a trial pursuant to circumstances that demonstrate the prosecution was abandoned "without request by him or arrangement with him."  White v. Wortz, 66 F.Supp.2d 331, 334 (D.Conn. 1999).  See also See v. Gosselin, 133 Conn. 158, 160 (1946).

In this matter, plaintiff's arrest culminated in the issuance of a nolle prosequi and courts in this district are split on the issue whether a nolle prosequi is a per se bar to a

section 1983 claim of false arrest or malicious prosecution.  <u>Birdsall v. City of Hartford</u>,

249 F.Supp.2d 163, 171 (D.Conn. 2003) (prosecution concluding in a nolle is not a

favorable termination satisfying the requisite element for a false arrest or malicious

prosecution claim).  <u>Compare</u> <u>Holman v. Cascio</u>, 390 F.Supp.2d 120, 125 (D.Conn.

2005) (nolle does not, per se, preclude a suit for false arrest).  The Second Circuit has

not adopted a resolution of this conflict.  <u>Assegai</u> at *2 n.2.

In this case, plaintiff's nolle was conditioned upon his completion of the Family

Violence Education Program of the Family Services Unit and psychological therapy.

This constitutes an "arrangement" as suggested by the court in <u>Roesch v. Otarola</u>, 980

F.2d 850, 853 (2d Cir. 1992) (a dismissal conditioned upon plaintiff's participation in

accelerated rehabilitation is not a favorable termination) and <u>White</u>, 66 F.Supp.2d at

334 (dismissal pursuant to plea agreement is not a favorable termination of the

proceedings).  Because the Court finds plaintiff's nolle as conditional upon his

completion of the program and therapeutic treatment, the Court finds that plaintiff's

<u>nolle</u> <u>prosequi</u> does not satisfy the requirement of a favorable termination.  This lack of

a final and favorable adjudication bars plaintiff's claim of malicious prosecution.  The

Court will grant summary judgment as to this claim.

## 2.     Use of Excessive Force

Plaintiff alleges that defendant Officers Wilcox and Boynton violated his Fourth

Amendment rights by employing excessive and unreasonable force against him during

the course of his arrest.  He claims that he was beaten with a baton and a flashlight and

was sprayed with pepper spray.  He suffered a laceration on his head that required

approximately thirteen staples to close.  Defendants counter that the use of force was

justifiable and in compliance with state and federal law.

In order to determine whether police officers have used excessive force, the finder of fact must consider whether the force was reasonable in light of the circumstances and facts there and then confronting the police officers. In doing so, its assessment may include the following factors: 1) the severity of the crime at issue; 2) whether the suspect poses an immediate threat to the officers or others; and 3) whether the suspect is resisting arrest or attempting flight to evade arrest. Graham v. Connor, 490 U.S. 386, 396 (1988). These factors must be considered from the vantage point of the particular circumstances of the incident in question and are not to be considered in light of the officers' underlying intent or motive. Jones v. Parmley, 465 F.3d 46, 61 (2d Cir. 2006). Furthermore, "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. The reasonableness of the force used should be assessed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396.

In the present case, it is undisputed that plaintiff fled from the officers and that the officers used pepper spray and a baton in order to handcuff him. Plaintiff claims that he was also beaten with a flashlight. Plaintiff asserts that the beating continued after he was handcuffed and was lying on the ground. It is also undisputed that as a result of the beating, plaintiff required medical attention.

There is a question whether, in light of these circumstances, the amount of force

11

used was proper or excessive.  The question of whether the officers' actions were objectively so unreasonable as to constitute excessive force is one for the jury to decide.  Universal Calvary Church v. City of New York, 2000 WL 1538019, *4 (S.D.N.Y.).  See also Breen v. Garrison, 169 F.3d 152, 153 (2d Cir. 1999).  Therefore, the Court will deny summary judgment on this claim.

### 3.    Due process

Plaintiff asserts that defendant police officers violated his right to due process of law in contradiction to his rights under the Fourteenth Amendment and the Connecticut Constitution.  It is not clear from the pleadings whether plaintiff is claiming the lack of due process as to his arrest or the officers' alleged use of excessive force and whether he is asserting a procedural or substantive due process violation.

Because the Court has already found that probable cause existed for the arrest of plaintiff, there was no violation of his substantive or procedural due process rights regarding this claim.  Lucky v. City of New York, 2004 WL 2088557, *6 (S.D.N.Y.) (where there was probable cause for plaintiff's arrest, there was no violation of substantive due process); New York State National Organization for Women v. Pataki, 261 F.3d 156, 172-73 (2d Cir. 2001) (where no constitutional violation has been found, procedural due process claims are dismissed with prejudice).

Plaintiff properly brought his claim of excessive force pursuant to the Fourth Amendment, as discussed in this part, section 2, supra.  This precludes a claim for a violation of substantive due process under the Fourteenth Amendment.  Albright v. Oliver, 510 U.S. 266, 273-74 (1994).  "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive

12

governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." <u>Graham</u>, 490 U.S. at 395.   Accordingly, plaintiff may not seek relief pursuant to a Fourteenth Amendment substantive due process theory.

Plaintiff's excessive force claim may not fall within the perimeters of a procedural due process claim.  Procedural due process claims are not applicable to an individual prior to arrest.  While some courts have recognized excessive force claims under procedural due process, such claims are applicable only to pretrial detainees subject to force after their preliminary hearing but before trial.  <u>Collier v. Baker</u>, 1999 WL 543206, *9 (N.D.Ill.).  <u>See</u> <u>Moore v. Pico</u>, 1996 WL 573247 (S.D.N.Y.) (analyzing inmate's claims of excessive force and procedural due process).

### 4.    Officer Dowty's Failure to Intercede

Plaintiff alleges that Officer Dowty failed to intercede on his behalf by failing or refusing to act to prevent Officers Boynton and Wilcox's use of excessive force.

It is well settled that a police officer has an affirmative duty to intercede in order to protect the constitutional rights of a citizen whose rights are being violated in his presence by other police officers.  <u>O'Neill v. Krzeminski</u>, 839 F.2d 9, 11 (2d Cir. 1988). An officer is liable for failure to intercede where the officer observes that excessive force is being used or has reason to know that it will be used.  <u>Curley v. Village of Suffern</u>, 268 F.3d 65, 72 (2d Cir. 2001).   In order for liability to attach, the officer must have had a realistic opportunity to intercede so as to prevent the harm.  <u>Anderson v. Branen</u>, 17 F.3d 552, 557 (2d Cir. 1994).

In the present matter, citing defendant Kelly's deposition, plaintiff claims that

13

Dowty was "very close to the occurrence," referring to the time of the arrest and the alleged use of excessive force.  (P.'s Ex. 2, p. 19.)   However, Kelly also said in his deposition that Dowty "had committed himself to addressing David Clark at that time." (Id.)  Consistent with this, plaintiff recounted that he did not know Dowty's whereabouts at the time, concluding that "it had to be Dowty" who was taking plaintiff's son to the police car.  (D.'s Ex. F, pg. 47.)

Dowty testified in his deposition that he became involved with David Clark when David "became combative with Officer Wilcox, and Officer Wilcox lost his footing.  And when he did that, I left my position of cover and went to his aid." (D.'s Ex. D, p. 40.) During Dowty's struggle with David, plaintiff ran further into the cow pasture, into an unlighted area, out of Dowty's sight.  (Id. at 42-44.)

Officer Dowty's testimony is consistent with that of plaintiff, thereby illustrating Dowty's distance from the alleged use of excessive force on the part of Officers Boynton and Wilcox.  Dowty testified that he did not and could not observe the other officers' treatment of plaintiff and that he was occupied with subduing and arresting plaintiff's son.  Plaintiff does not present any evidence that contradicts this testimony.

Accordingly, plaintiff does not create a triable issue of fact necessary to defeat summary judgment.  His conclusory allegations, unsupported by evidence, are insufficient.  Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).  The Court will grant summary judgment in favor of Officer Dowty on this claim.

### 5. Medical Treatment

In count four of his amended complaint, plaintiff claims that defendant Officers Dowty, Wilcox and Boynton were reckless and malicious in that they failed to obtain proper and timely medical treatment for him.  In count five, plaintiff alleges that these defendants were negligent in their failure to obtain such medical treatment.  Defendants argue that plaintiff presents no evidence to substantiate these claims and that he did receive proper medical treatment immediately, while still at the scene of the arrest, and later, at Middlesex Medical Center.

In order to prove liability on the part of the police officers for the denial of immediate medical treatment, plaintiff must demonstrate that defendants denied treatment required to address a serious medical condition because of their deliberate indifference to that need.  Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996) (analysis of prisoner's right to medical treatment pursuant to Eighth Amendment).[6]  See also City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983) (due process clause of Fourteenth Amendment applies to pretrial detainee's claim of deliberate indifference to medical needs).  In order to determine whether a condition is serious, one must consider: "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition

---

[6]Because plaintiff was not incarcerated at the time of the alleged wrongful conduct, his claim does not fall under the purview of the Eighth Amendment's prohibition against cruel and unusual punishment.  Instead, it arises from the due process clause of the Fourteenth Amendment.  Bell v. Wolfish, 441 U.S. 520, 535 n. 16 (1979).  However, the Second Circuit applies the same standard to analyze claims of indifference under both the Eighth and Fourteenth Amendments.  Weyant, 101 F.3d at 856.

that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). In order to show deliberate indifference, plaintiff must demonstrate "something more than mere negligence; but proof of intent is not required." Weyant, 101 F.3d at 856.

Defendants allege that they attended to plaintiff's medical needs at the scene of the arrest.[7] They claim that they were qualified to and did provide the appropriate medical care.[8] Dowty asserts that he observed Boynton with medical supplies attending to Mr. Clark and that Boynton controlled the bleeding of plaintiff's lacerations. They also claim that plaintiff's family members brought wet towels to plaintiff in order to decontaminate him from the effects of the pepper spray. At 9:14, defendants and plaintiff left the scene to transport plaintiff to Middlesex Medical Center, where he was admitted for treatment at 9:40.

Plaintiff claims that he was not provided medical care until he arrived at the hospital and that defendants postponed the departure from his home in order to delay his necessary care. He points to the fact that the time elapsed between the time he left his home, drove the 7.4 miles to the hospital and was admitted for treatment, was 26 minutes. He claims this is evidence that defendants took a circuitous route to the hospital, further delaying medical attention.

---

[7]Defendants do not argue whether plaintiff's condition was "serious," only that they provided him with appropriate and timely medical care. For the purposes of this ruling, therefore, the Court will conclude that there is no debate as to the seriousness of plaintiff's condition.

[8]At the time of the incident, defendants Wilcox and Dowty were certified Medical Response Technicians and defendant Boynton was a certified Emergency Medical Technician.

Neither party presents conclusive evidence as to the treatment plaintiff did or did not receive at the scene of the arrest.  There is no evidence that approaches the standard necessary to prove or disprove deliberate indifference constituting a violation of plaintiff's constitutional rights on this ground.  Resolving all ambiguities and drawing reasonable inferences in favor of the nonmovant, the Court finds these are genuine issues of material fact.  See Archer v. Dutcher, 733 F.2d 14, 16 (2d Cir. 1984) (disputed facts as to deliberate indifference where inmate had received "comprehensive, if not doting, health care").  A decision regarding the question of deliberate indifference is a finding of fact that is impermissible at the summary judgment stage. Liscio v. Warren, 901 F.2d 274, 276 (2d Cir. 1990).  The Court will deny defendants' motion for summary judgment on this claim.

### 6.     Qualified Immunity

#### a.     Officers Wilcox, Boynton and Dowty

Plaintiff has brought this action against Officers Wilcox, Boynton and Dowty in both their official and individual capacities.  The Court finds that the officers are entitled to qualified immunity in their official capacity, but are not entitled to it in their individual capacities.

#### i.     Official Capacity

A claim against a town employee in his official capacity is actually an action against the governmental entity that the employee represents. Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 690 n. 55 (1978) ("official-capacity suits generally represent only another way of pleading an action against an

entity of which an officer is an agent"). Accordingly, a plaintiff seeking damages from an officer in his official capacity must turn to the government entity itself for recovery of such damages. Kentucky v. Graham, 473 U.S. 159, 166 (1985).

In order to prevail in an official capacity suit, the government entity must be a "moving force" behind plaintiff's alleged deprivation of a constitutional right. Id. Plaintiff must demonstrate that the entity's policy or custom played a part in the violation of his rights. Id. Because the officers' qualified immunity in their official capacity is entwined with the actions attributable to the municipality, the Court will address this issue in its analysis of municipal liability in this part, section c., infra.

### ii.    Individual Capacity

Juxtaposed to a claim for qualified immunity in one's official capacity, a suit against a party in his individual capacity is a suit against the official personally; an award of damages against an officer in his individual capacity may be sought only against the officer's personal assets. Id. In order to establish personal liability in a section 1983 action, plaintiff must show that the official was acting under color of state law and that this action caused the deprivation of a constitutional right. Id.

An official sued in his individual capacity is entitled to qualified immunity to the extent that his conduct does not violate clearly established constitutional or statutory rights of which a reasonable person should have known or, even if the rights were clearly established, it was objectively reasonable for the official to believe that his conduct did not violate those rights. Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982).

To determine whether a right was clearly established at the time the conduct in question occurred, the court should consider: "1) whether the right in question was

defined with reasonable specificity; 2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and 3) whether under preexisting law, a reasonable defendant official would have understood that his or her acts were unlawful."  Frank v. Relin, 1 F.3d 1317, 1328 (2d Cir. 1993). Qualified immunity does not attach where the contours of the right were sufficiently clear that a reasonable official would recognize that his conduct violates that right. Anderson v. Creighton, 483 U.S. 635, 641 (1987).

Because the Court has already found that the officers had probable cause to arrest plaintiff, it is not necessary to consider this claim pursuant to a qualified immunity analysis.  Instead, the question is whether the officers are entitled to qualified immunity on plaintiff's claims of the use of excessive force and the lack of timely and appropriate medical attention.

In the present matter, the Court has found that there is a genuine issue of material fact as to the severity of the force the officers utilized during the course of their arrest of plaintiff.   For the sake of the analysis here, the facts surrounding the officers' use of force during the arrest, viewed in the light most favorable to plaintiff, indicate a violation of his constitutional rights and that this right was applicable to the factual situation existing at the time of the arrest.  See Graham, 490 U.S. at 393-94 (recognizing constitutional right not to be subject to excessive force).  A reasonable officer should know that continuing to beat a suspect after he was wrestled to the ground and handcuffed, thereby causing a severe laceration to his head and other bruises and contusions, would constitute a violation of plaintiff's right to be free from excessive force.   Consequently, defendant officers are not entitled to qualified

immunity on this ground.

As for plaintiff's assertion of a constitutional violation of his right to medical care, the Court also finds that the officers are not entitled to qualified immunity on this claim. Having already found a genuine issue of material fact as to this claim, a constitutional violation could be construed from the relevant facts.  The next step is to assess whether that right was clearly established at the time of the incident and that a reasonable officer should have been aware of this right.  Brosseau, 543 U.S. at 199.  See Weyant, 101 F.3d at 856 (medical care delineated as right).  If there was a constitutional violation, defendant officers are not entitled to qualified immunity because they reasonably should have known that plaintiff had the clearly established right not to be denied medical treatment for a serious medical condition.  Mills v. Fenger, 216 Fed. Appx. 7, 11 (2d Cir. 2006).  A jury must determine the appropriateness of the medical care the defendant officers may have provided and whether they fulfilled plaintiff's rights thereto.  If not, the jury must then proceed to the second step of the analysis and decide whether the officers should have been aware of plaintiff's relevant rights. Qualified immunity at this stage of the proceedings will be denied.

**b.    Defendant Sergeant Garritt Kelly**

**i.  Supervisory Capacity**

In count eight, plaintiff alleges that defendant Kelly violated his constitutional rights in that he failed to supervise adequately defendant officers Dowty, Boynton and Wilcox.  To wit, plaintiff claims that Kelly violated 42 U.S.C. sections 1983 and 1988 in that he failed, by means of supervision and discipline: 1) to prevent the officers'

excessive and unreasonable use of force against plaintiff; 2) to prevent the officers'
deprivation of plaintiff's liberty, privileges and immunities without due process of law; 3)
to prevent the plaintiff from being subject to unreasonable arrest; 4) to provide plaintiff
timely medical attention; and 5) to take appropriate disciplinary action against the
officers for their unlawful conduct against plaintiff.  Defendants argue that defendant
Kelly is entitled to qualified immunity.

Plaintiff has brought his claims against defendant Kelly in Kelly's supervisory
capacity.  In order for Kelly to be found liable in his supervisory capacity, plaintiff must
assert facts that demonstrate a constitutional violation on the part of the official.  See
Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999).  "A supervisor may not be held
liable under section 1983 merely because his subordinate committed a constitutional
tort."  Poe v. Leonard, 282 F.3d 123, 140 (2d cir. 2002).  In order to hold a supervisor
liable for a constitutional violation, plaintiff must demonstrate that the supervisor: 1)
directly participated in the underlying constitutional violation; 2) failed to remedy the
violation upon learning of it; 3) established a custom or policy fostering the violation or
allowed such custom or policy to continue after learning of the violation; 4) was grossly
negligent in the supervision of the subordinates who committed the violation; or 5) acted
with deliberate indifference to the rights of plaintiff by failing to act on allegations of
subordinates' misconduct.  Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

In Poe, the court pointed out that "a plaintiff is almost always able to point to
what more an officer or supervisor could have done" in order to prove a supervisor has
been negligent.  Poe, 282 F.3d at 145.  "That is not the issue.  Under section 1983, the
issue is whether the 'more' that [the supervisor] could have done was clearly

established by law at the time he acted or failed to act so that it can be said that [the supervisor] had notice that his actions or omissions rose to the level of a constitutional violation." Id.

The evidence provided demonstrates that Kelly exercised reasonable care in conducting his duties surrounding the circumstances of plaintiff's arrest. Specifically, Kelly did not arrive on the scene until after plaintiff had been transported to Middlesex Medical Center, so there is no evidence that he was directly involved in the arrest or that he was aware of the medical attention plaintiff may or may not have received. Defendants proffer evidence that Kelly followed appropriate departmental policies and procedures, including: 1) upon his arrival, he investigated what had transpired by interviewing plaintiff's sister and brother-in-law: 2) after learning of the circumstances surrounding the arrest, Kelly interviewed plaintiff and plaintiff's son regarding these circumstances and the conduct of defendant officers; 3) he conducted an administrative review of plaintiff's arrest; 4) he interviewed the defendant officers about the arrest; and 5) he made diligent inquiry of the arrest by reviewing the documents related to the case; specifically, the Police Incident Report and the Use of Force Reports. This conduct reflects departmental policies as set forth in the department's rules and regulations regarding the use of force, arrest, and standard operating procedures for citizen complaints.

Kelly's actions demonstrate professionalism in the course of his administrative review of the incident and that he had no reason to believe that his acts or omissions rose to the level of a violation of plaintiff's constitutional rights. His actions evince that he was conscientious in his supervision of his subordinates and reflects the propriety of

the established process for such review.  There is no evidence that such process

fostered an environment conducive to the alleged violations.  The exercise of this care

precludes a finding that Kelly is liable under any prong of the relevant test.  The Court

will grant summary judgment as to Kelly's qualified immunity in his supervisory capacity.

### ii.  Individual Capacity

Plaintiff also does not prevail on his claims against Kelly in his individual

capacity. In Poe, the Second Circuit set forth the test for a supervisor's qualified

immunity in his individual capacity.  In order to overcome a supervisor's qualified

immunity, plaintiff must allege sufficient facts that suggest that the supervisor knew or

should have known that there was a substantial risk that his subordinates would violate

plaintiff's constitutional rights, but that he deliberately or recklessly disregarded the risk

by failing to take action that a reasonable supervisor would take in order to prevent

such risk.  This failure must be the element that caused the alleged constitutional

violation.  Poe, 282 F.3d at 142.

There is no evidence that Kelly should have been aware of any risk defendant

officers might have presented.  The record establishes that the officers received the

relevant manuals and underwent the necessary training.  They fulfilled the standards

and requirements of the Police Officer Standards and Training Council set forth in

Conn. Gen. Stat. section 7-249d, which provides in relevant part: "that each police

officer satisfactorily complete at least forty hours of certified review training every three

years in order to maintain certification."  Defendants present ample evidence that the

three police officers have adhered to this requirement.  Kelly, in turn, followed the

policies set forth by the Town in good faith and concluded, based on his adherence to

23

such procedure and his determination that defendant officers also followed proper procedure, that their actions and his own actions were lawful

Furthermore, it is undisputed that none of the defendant officers has been the subject of complaints of the use of excessive force or false arrest. There was no reason, therefore, for Kelly to suspect that there was a risk that the officers would have acted inappropriately in this instance or that Kelly deliberately or recklessly disregarded the risk by failing to take action. Based on Kelly's findings, there was no substantial risk that defendant officers would present a threat or violate plaintiff's constitutional rights. Our inquiry ends here.

Kelly is entitled to qualified immunity in his individual capacity and the Court will grant summary judgment on the claims against him.

### c.    Chief of Police Reimondo and the Town of East Hampton

In Monell, the Supreme Court established that neither a government entity nor its officials sued in their official capacities can be found liable on a section 1983 claim pursuant to the doctrine of respondeat superior. Monell, 436 U.S. at 690 n. 55. Instead, in order to establish municipal liability, plaintiff must show that a municipal policy or custom was the cause of the violation of plaintiff's constitutional rights. City of Canton v. Harris, 489 U.S. 387, 385 (1989).

Plaintiff contends that the Town and the Chief of Police are liable in that they failed to promulgate policies and failed to train or supervise the defendant officers as to the proper procedures for the use of force and proper arrest. However, he has proffered no evidence that supports his allegation that the training methods in place were deficient or how such deficiency caused the police officers to violate plaintiff's

24

constitutional rights.  See Amnesty America v. Town of West Hartford, 361 F.3d 113,

129-30 (2d Cir. 2004) (plaintiffs required to provide evidence that defendant officers'

conduct was the result of a faulty training program and that such program, not "isolated

misconduct" on the part of defendants, was the cause of the alleged constitutional

violation).  Instead, as described, supra, evidence has been presented by defendants

that establishes that proper and encompassing procedures were in place and that

defendant officers followed these regulations.

This evidence makes summary judgment appropriate for Chief Reimondo and

the Town.  See Cuba-Diaz v. Town of Windham, 274 F.Supp.2d 221 (D.Conn. 2003)

(granting summary judgment for defendants Town and police chief where record

established that employees received proper training).

As for Reimondo's qualified immunity in his individual capacity, the Court will

adhere to the standard enunciated by Poe, as discussed supra, and will find that

Reimondo had no reason to believe or suspect that officers Boynton, Wilcox or Dowty

posed any kind of threat to plaintiff.  Plaintiff claims that the East Hampton police

department has a reputation of using excessive force and that this should have alerted

Reimondo to the possibility of a threat to an arrestee.  This assertion is insufficient to

establish a question of fact.  Plaintiff must offer some "hard evidence showing that [his]

version of the events is not wholly fanciful."  D'Amico v. City of New York, 132 F.3d 145,

149 (2d Cir. 1998).  As demonstrated above, none of the officers has ever received

citizen complaints regarding either false arrest or the alleged use of force.  There was

no risk suggested by the officers' past conduct.  Accordingly, Captain Reimondo is

entitled to qualified immunity in his individual capacity.

### C.     State Claims

#### 1.     Intentional Infliction of Emotional Distress

To prevail on his claim of intentional infliction of emotional distress, plaintiff must establish: 1) that defendants intended to inflict emotional distress or knew or should have known that their conduct would likely result in emotional distress; 2) that the conduct was extreme and outrageous; 3) that the conduct in question was the cause of plaintiff's distress; and 4) that the emotional distress experienced by plaintiff was severe.  Appleton v. Board of Education of Town of Southington, 254 Conn. 205, 210 (2000).

Courts have held that the use of excessive force can establish a claim for intentional infliction of emotional distress.  Brown v. Catania, 2007 WL 879081, *10 (D.Conn.).  Because the Court has found that material issues of fact exist regarding plaintiff's claim of excessive force, summary judgment is improper as to plaintiff's claim of intentional infliction of emotional distress.

#### 2.     Negligence and Negligent Infliction of Emotional Distress

Defendants are entitled to summary judgment on plaintiff's claims of negligence and negligent infliction of emotional distress.  Plaintiff may not prevail on a negligence claim when he has brought claims of intentional use of excessive force and intentional infliction of emotional distress.  Naccarato v. Scarselli, 124 F.Supp.2d 36, 45 (N.D.N.Y. 2000).  See Mazurkiewicz v. New York City Transit Authority, 810 F.Supp. 563, 570-71 (S.D.N.Y. 1993) (holding that plaintiff cannot argue intentional conduct based on a section 1983 excessive force claim and also argue that defendants were acting

negligently; "while such a tactic may be appropriate were this a criminal action and plaintiff the defendant, it has no place in a civil action such as the instant lawsuit"). The Court will grant defendants' motion for summary judgment as to plaintiff's claims related to negligence.

### 3.    Assault and Battery

Plaintiff claims that defendants Boynton and Wilcox subjected him to assault and battery in the effectuation of his arrest, causing him to fear imminent serious bodily harm or death. To prevail on a claim for assault and battery, plaintiff must establish that defendants applied force or violence to him and that the application of such force or violence was unlawful. Williams v. Lopes, 64 F.Supp.2d 37, 47 (D.Conn.1999). See Conn. Gen. Stat. section 53a-59 (assault in the first degree).

Because the Court has found that a genuine issue of material fact exists as to plaintiff's claim of excessive force, it necessarily follows that questions arise as to the reasonableness of defendants' use of physical force pursuant to state law.[9] See Miller v. Lovett, 879 F.2d 1066, 1073 (2d Cir. 1989), partially abrogated on other grounds, Graham, 490 U.S. at 386. In Miller, the Second Circuit court held that the claim of assault and battery is "so tightly interwoven" with the federal claim of excessive force that the district court erred when it refused to exercise its pendent jurisdiction over the

---

[9]Conn. Gen. Stat. section 53a-22 provides in relevant part: "a peace officer . . . is justified in using physical force upon another person when and to the extent that he reasonably believes such to be necessary to: (1) effect an arrest or prevent the escape from custody of a person whom he reasonably believes to have committed an offense . . .; or (2) defend himself or a third person from the use or imminent use of physical force while effecting or attempting to effect an arrest or while preventing or attempting to prevent an escape."

claim of assault and battery.  Miller, 879 F.2d at 1073.

For the same reasons the Court will deny summary judgment on plaintiff's claim of excessive force, it will deny summary judgment as to his claim of assault and battery.

### 4.    Recklessness and Maliciousness

In count four, plaintiff alleges reckless and malicious behavior on the part of Officers Dowty, Boynton and Wilcox in that they arrested him without probable cause; restrained and assaulted him without justification or provocation; used excessive and unreasonable force; that Officer Dowty failed to intercede in Officers Boynton and Wilcox's use of excessive and unreasonable force; and that the officers failed to provide him proper and timely medical treatment.  He argues that he suffered damages as the direct and proximate result of this reckless and malicious conduct.

In order to establish reckless and malicious conduct pursuant to common law, plaintiff must prove that defendants' conduct included "the existence of a state of consciousness with reference to the consequences of one's acts."  Martin v. Brady, 261 Conn. 372, 379 (2002).  This requires more than a failure to take reasonable precautions to avoid harm to others.  A party must exhibit a reckless disregard of the rights or safety of others or the possible results of his conduct.  "In sum, such conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." Id.  The fact that a police officer has acted beyond the scope of his authority may be sufficient to prove that his conduct was reckless or malicious.  Id.

The Court has found that there is a genuine issue of material fact as to the extent of Officers Dowty, Boynton and Wilcox's use of excessive and unreasonable

28

force and the propriety and adequacy of the medical care they provided to the plaintiff. From this, one may infer that the officers possessed the necessary "state of consciousness" to deem their conduct as reckless or malicious. Summary judgment as to this claim must be denied.

### 5. Town's Liability Pursuant to Conn. Gen. Stat. Section 52-557n

Plaintiff argues in Count 11 that the Town is legally liable for the acts of defendants Dowty, Wilcox and Boynton pursuant to Conn. Gen. Stat. section 52-557n.[10] Section 52-557n abrogates the common law provision that municipalities are immune from suit for torts committed by their employees. Vejseli v. Pasha, 282 Conn. 561, 572 (2007). See also Spears v. Garcia, 263 Conn. 22, 29 (2003). Instead, section 52-557n permits a direct cause of action against the municipality.

Pursuant to common law, a municipal employee is liable for damages arising from a ministerial act, but is entitled to qualified immunity in the performance of governmental acts. "Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. In contrast, ministerial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." Id. at 36. The common law immunity for municipal employees

---

[10]Conn. Gen. Stat. section 52-557n provides in relevant part: "(1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties. . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

for discretionary acts is identical to a municipality's immunity for its employees' discretionary acts under section 52-557n.  Myers v. City of Hartford, 84 Conn.App. 395, 401 (2004).

There are three exceptions to the immunity from liability for the performance of discretionary acts by a municipal employee: 1) where the circumstances make it apparent to the municipal officer that his failure to act would be likely to subject an identifiable person to imminent harm; 2) where a statute specifically provides for a cause of action against a government entity or official for failure to enforce certain laws; and 3) where the alleged acts involve malice, wantonness or intent to injure, rather than negligence.  Evon v. Andrews, 211 Conn. 501, 505 (1989).

The Superior Court has consistently held that the acts or omissions of police officers in the exercise of their duties are discretionary in nature.  Susman v. Town of East Haven, 2007 WL 1532713, *4 (Conn.Super.); Campbell v. Southern Connecticut State University, 2007 WL 1121290, *3 (Conn.Super.).  Specifically, the Superior Court has determined that "the investigation of crimes and decisions to make arrests for them is clearly a discretionary rather than a ministerial function."  Gonzalez v. City of Bridgeport, 1993 WL 197874, *2 (Conn.Super.).  The critical question, therefore, is whether defendant officers' acts fall within the scope of any of the delineated exceptions for liability for discretionary acts.

Plaintiff claims that his allegations against Officers Dowty, Boynton and Wilcox fall under the third exception: that the alleged acts involve intent to injure, rather than negligence.  Because the Court has found that a question of material fact exists as to the intentional acts of the officers, it finds that the third exception for liability is

30

applicable to the instant matter.  Pursuant to section 52-557n, the Town may not be protected from its liability for its employees' acts.  Summary judgment is inappropriate for this claim.

### 6.    Respondeat Superior

Plaintiff acknowledges that liability pursuant to the doctrine of <u>respondeat superior</u> is not available pursuant to section 1983.  However, in Count 12, by incorporation of paragraphs 1 through 21, he does assert this theory of liability for his state constitutional claims of the use of excessive force and arrest without probable cause.

When state claims remain viable in an action, there is still a basis for <u>respondeat superior</u> liability.  <u>Jones v. City of Hartford</u>, 285 F.Supp.2d 174, 190 (D.Conn. 2003).  Because the Court has found that probable cause existed for plaintiff's arrest, plaintiff's claim for <u>respondeat</u> <u>superior</u> liability for this allegation is moot.  However, because there is a genuine issue of material fact as to defendant officers' use of excessive force, plaintiff's claim for municipal liability pursuant to the doctrine of <u>respondeat</u> <u>superior</u> may have merit.  The Court will not grant summary judgment on this issue.

### 7.    State Constitutional Claims

Plaintiff asserts that his claims of false arrest and excessive force fall within the penumbra of Article First, Sections 8 and 9 of the Connecticut Constitution.[11]  Section 8

---

[11]Article First, Section 7 protects citizens against unreasonable searches and seizures.  This includes claims of unreasonable force used in the course of an arrest. <u>Carey v. Maloney</u>, 480 F.Supp.2d 548, 561 (D.Conn. 2007).  Plaintiff does not assert a claim pursuant to Section 7, but the Court will address his constitutional claim of excessive force pursuant to the due process clause of Section 8.

provides in relevant part: "No person shall be . . . deprived of life, liberty or property without due process of law."  Section 9 provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

Because the Court has already found that defendants Dowty, Wilcox and Boynton arrested plaintiff with probable cause, defendants are entitled to summary judgment as to this claim.  As for his claim of the use of excessive force, the Court has found that Officers Boynton and Wilcox may have violated his constitutional rights under section 1983.  Pursuant to this finding, a question of material fact remains as to this corresponding state constitutional claim and summary judgment will be denied.

**CONCLUSION**

For the foregoing reasons, the Court DENIES defendants' motion for summary judgment [Doc. #41] as to counts one and two insofar as they allege the use of excessive force; count three (assault and battery); count four insofar as it alleges the use of excessive force, the failure to provide timely and proper medical attention and maliciousness and recklessness; count seven (intentional infliction of emotional distress); count eleven (respondeat superior); and count twelve (liability of Town pursuant to Conn. Gen. Stat. section 52-557n).

The Court GRANTS defendants' motion for summary judgment as to count one insofar as it alleges false arrest and the violation of his right to due process; count two insofar as it alleges unlawful arrest and the violation of his right to due process; count four insofar as it alleges false arrest; count five (negligence); count six (negligent infliction of emotional distress); count eight (liability as to defendant Kelly), count nine (liability as to defendant Reimondo); and count ten (liability as to the Town of East Hampton under section 1983).

Dated this 9th day of July, 2007 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge